******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAMES BOYAJIAN ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF VERNON
## (AC 43273)

Prescott, Suarez and Vitale, Js.

*Syllabus*

The plaintiffs, B and J Co., operated a liquor store in the town of Vernon. The town's zoning regulations required establishments that sell alcoholic liquors to be separated by a distance of no less than 3000 feet. T filed an application with the town's zoning board of appeals for a variance that would allow him to establish a liquor store in a location that was 2935 feet from the plaintiffs' store. The board scheduled a public hearing on the application and provided notice of the hearing to the abutting landowners by letter and to the general public in a local newspaper. At the conclusion of the hearing, which the plaintiffs did not attend, the board voted to approve the variance. T then submitted an application to the town's planning and zoning commission for a special permit to allow the sale of alcohol at the property. After a public hearing, at which B spoke on the record and claimed that the underlying variance was void, the commission approved the special permit application. The plaintiffs appealed the commission's decision to the Superior Court, claiming, inter alia, that the variance was void, that the commission should not have relied on the variance in determining whether to grant the special permit, and that the board lacked the authority to grant the variance. The trial court denied the appeal, and the plaintiffs, on the granting of certification, appealed to this court. *Held* that the plaintiffs' failure to appeal from the decision of the board that granted the application for the variance rendered their opposition to the commission's decision to grant the special permit an impermissible collateral attack on the validity of the variance: once the statutory period to appeal the board's decision to grant the variance had expired, the decision became final; moreover, collateral attacks on the decisions of zoning authorities are generally impermissible in light of the need for stability in land use planning and the need for justified reliance by the interested parties; furthermore, the plaintiffs failed to demonstrate that either of the conditions that may permit a collateral attack on a previously unchallenged zoning decision were satisfied, as, because the board acted within its statutorily authorized power to vary zoning regulations, its decision was not so far outside of what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, and the plaintiffs' argument that the continued maintenance of the variance would violate a strong public policy because it varied the town's zoning regulations was unavailing because it merely described the purpose of a variance.

Argued March 3—officially released July 20, 2021

*Procedural History*

Appeal from the decision of the defendant granting a special permit application filed by Jagdev Toor, brought to the Superior Court in the judicial district of Tolland where the court, *Sicilian, J.*, granted the motion of Jagdev Toor to intervene as a defendant; thereafter, the matter was tried to the court, *Hon. Samuel J. Sferrazza*, judge trial referee; judgment denying the appeal, from which the plaintiffs, on the granting of certification, appealed to this court. *Affirmed.*

*James H. Howard*, for the appellants (plaintiffs).

*Louis A. Spadaccini*, with whom, on the brief, were

*Martin B. Burke* and *Roseann Canny,* for the appellee (defendant).

*Opinion*

PRESCOTT, J. This appeal requires us to consider whether the plaintiffs, who failed to appeal from a decision of the local zoning board of appeals to grant a variance; see General Statutes § 8-8 (b); may nevertheless collaterally attack the validity of that variance by opposing, before the local planning and zoning commission, a special permit application related to the property to which the variance attached. We conclude that the plaintiffs may not collaterally attack the validity of the variance.

The plaintiffs, James Boyajian and JPB, LLC,[1] appeal from the judgment of the trial court. The trial court denied the plaintiffs' appeal from the decision of the defendant, the Planning and Zoning Commission of the Town of Vernon (commission), granting a special permit application filed by the intervening defendant, Jagdev Toor.[2] As they did before the trial court, the plaintiffs claim that (1) the variance that the Zoning Board of Appeals of the town of Vernon (board) granted to Toor, and which otherwise entitled Toor to receive the special permit, was void, (2) the commission, in granting the special permit, improperly relied on the variance, and (3) the board lacked the authority to grant the variance. Essentially, each of these claims is a challenge to the validity of the variance granted to Toor by the board. We conclude that the plaintiffs' failure to appeal from the decision of the board that granted Toor's application for the variance renders the plaintiffs' opposition to the commission's decision to grant Toor's special permit application an impermissible collateral attack on the validity of the variance. Accordingly, we affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to our resolution of this appeal. Boyajian is the sole owner of JPB, LLC. The plaintiffs operate Riley's Liquor, located at 312 Hartford Turnpike in Vernon. The Vernon Zoning Regulations (zoning regulations) mandate that establishments that sell alcoholic liquors be separated by a distance of no less than 3000 feet, measured in a straight line from the main public access doors of each establishment. Vernon Zoning Regs., § 17.1.2. Toor sought to open and operate a liquor store at a commercial building located at 206 Talcottville Road in Vernon (property), which was located 2935 feet from Riley's Liquor. On or around January 31, 2018, Toor filed an application to the board for a variance[3] from the 3000 foot separating distance requirement by sixty-five feet to permit the 2935 foot separating distance between the property and Riley's Liquor. In the absence of the variance, the proposed liquor store would have violated the distance requirement contained in the zoning regulations.

The board scheduled a public hearing on the variance

application for April 18, 2018. In anticipation of the hearing, the board provided notice of the variance application and hearing by letter to abutting property owners and to the public in the Journal Inquirer. On April 18, 2018, the board held a public hearing and, on its conclusion, voted to approve the variance by a four to one vote. The plaintiffs did not attend the hearing. The board notified Toor of its approval on April 19, 2018. At no point did the plaintiffs appeal from the board's decision to grant the variance.[4]

In July, 2018, Toor submitted to the commission an application for a special permit for the sale of alcohol at the property. The commission held a public hearing on the special permit application on August 16, 2018, at which Boyajian spoke on the record[5] and expressed, inter alia, his contention that the underlying variance was void.[6] At the conclusion of the hearing, the commission voted to approve the special permit application by a five to one vote and noted that the variance was "in effect" at the time of the hearing.[7]

The plaintiffs appealed the commission's approval of the special permit application to the Superior Court. In their brief to the trial court, the plaintiffs argued, in relevant part, that (1) the variance was void, (2) the board lacked the authority to grant the variance, (3) the commission's reliance on the void variance was a "flawed foundation upon which [it] premised its" approval of the special permit, and (4) the commission "ignored" the zoning regulations, which otherwise prohibited approval of the special permit.[8]

The trial court, *Hon. Samuel J. Sferrazza*, judge trial referee, denied the appeal. In considering whether the commission should have independently reviewed the property's compliance with the statutory separating distance requirement and the validity of the underlying variance, the court recognized that the plaintiffs' arguments posed "some very interesting and challenging legal issues."[9] "The court determine[d], however, that it need not resolve those conundrums. This is because no appeal was taken from the decision in which all these issues could have been adjudicated. Whether the [board's] decision was erroneous became immaterial once the appeal period expired." The trial court characterized the plaintiffs' contention with the commission's decision, insofar as the plaintiffs sought independent review of the commission's decision to grant a special permit predicated on an allegedly void variance, as an impermissible "collateral attack on an unappealed . . . decision . . . ." Because the trial court concluded that the attack did not fall under one of the potential exceptions the Supreme Court identified in *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 104–105, 616 A.2d 793 (1992), the plaintiffs could not prevail on the issue. Pursuant to Practice Book § 81-1 et seq. and § 8-8 (o), the plaintiffs requested certification to appeal to

this court. Upon consideration of the plaintiffs' petition, we granted review.

The plaintiffs claim that the trial court improperly upheld the commission's decision to grant the special permit application. More specifically, the plaintiffs argue that (1) the underlying variance granted to Toor was void, (2) in determining whether Toor qualified for the special permit, the commission should have applied the standards prescribed by the zoning regulations, rather than relying solely on the variance, and (3) the board lacked the statutory authority to grant the variance.[10] The defendant argues in response that the plaintiffs' opposition to the commission's decision to grant the special permit constitutes an impermissible collateral attack on the board's approval of the variance. It argues that the commission and the trial court properly rejected the plaintiffs' arguments on the ground that the plaintiffs should have raised their claim on direct appeal from the board's decision to grant the variance. We agree with the defendant.

We first set forth the relevant law, including our standard of review. On appeal, we review the trial court's legal conclusion that the plaintiffs' opposition to the commission's decision to grant the special permit application is an impermissible collateral attack on the board's decision to grant the variance application. Resolution of this issue presents a question of law over which our review is plenary. *Santarsiero* v. *Planning & Zoning Commission*, 165 Conn. App. 761, 772, 140 A.3d 336 (2016) ("[b]ecause the court . . . made conclusions of law in its memorandum of decision [in this case], our review is plenary" (internal quotation marks omitted)).

"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations." (Internal quotation marks omitted.) *Putnam Park Apartments, Inc.* v. *Planning & Zoning Commission*, 193 Conn. App. 42, 53, 218 A.3d 1127 (2019). An applicant may apply for a special permit from a zoning commission; see General Statutes § 8-2 (a); and "[i]t is well settled that [for a commission to grant] a special permit, an applicant must satisf[y] all conditions imposed by the regulations." (Internal quotation marks omitted.) *St. Joseph's High School, Inc.* v. *Planning & Zoning Commission*, 176 Conn. App. 570, 591, 170 A.3d 73 (2017). "[A]lthough it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise

its discretion during the review of the proposed special [permit], as it applies the regulations to the specific application before it." (Emphasis omitted; internal quotation marks omitted.) Id., 593–94. "In making such determinations, moreover, a zoning commission may rely heavily upon general considerations such as public health, safety and welfare." (Internal quotation marks omitted.) *Torrington* v. *Zoning Commission*, 261 Conn. 759, 770, 806 A.2d 1020 (2002).

By contrast, "a variance is an expression of explicit authority to contravene local zoning ordinances." *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 129 Conn. App. 275, 286, 19 A.3d 715 (2011). "Zoning boards of appeals are authorized to grant variances in cases in which enforcement of a regulation would cause unusual hardship . . . ." *Mayer-Wittmann* v. *Zoning Board of Appeals*, 333 Conn. 624, 640, 218 A.3d 37 (2019). "[W]e have interpreted [General Statutes] § 8-6 to authorize a zoning board of appeals to grant a variance . . . when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Turek* v. *Zoning Board of Appeals*, 196 Conn. App. 122, 134, 229 A.3d 737, cert. denied, 335 Conn. 915, 229 A.3d 729 (2020). "Interpretation of the zoning regulations is a function of a zoning board of appeals. The variance power exists to permit what is prohibited in a particular zone. . . . [T]he zoning board of appeals is the court of equity of the zoning process . . . ." (Internal quotation marks omitted.) *Santarsiero* v. *Planning & Zoning Commission*, supra, 165 Conn. App. 779.

Although an aggrieved individual may challenge the decision of a zoning authority; see, e.g., General Statutes § 8-8 (b); as a general rule, "one may not institute a collateral action challenging the decision of a zoning authority." *Torrington* v. *Zoning Commission*, supra, 261 Conn. 767. "A collateral attack is an attack upon a judgment, decree or order offered in an action or proceeding other than that in which it was obtained, in support of the contentions of an adversary in the action or proceeding . . . ." (Internal quotation marks omitted.) *Warner* v. *Brochendorff*, 136 Conn. App. 24, 32 n.7, 43 A.3d 785, cert. denied, 306 Conn. 902, 52 A.3d 728 (2012). A party asserting a collateral attack "attempt[s] to avoid, defeat, or evade [a judgment], or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." (Internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission*, 49 Conn. App. 684, 688–89 n.5, 717 A.2d 246 (1998). "A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Internal quotation marks omitted.) *Federal*

*National Mortgage Assn.* v. *Farina*, 182 Conn. App. 844, 853, 191 A.3d 206 (2018); see also *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 103 (suggesting that "[i]t would be fundamentally unfair . . . to permit" collateral attack).

"The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings. Unless it is entirely invalid and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it." (Internal quotation marks omitted.) *Federal National Mortgage Assn.* v. *Farina*, supra, 182 Conn. App. 853.

"[W]e have ordinarily recognized that the failure of a party to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 102. Thus, "the general rule [is] that one may not institute a collateral action challenging the decision of a zoning authority. . . . [T]he rule requiring interested parties to challenge zoning decisions in a timely manner rest[s] in large part . . . on the need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town—on the decisions of the zoning authorities." (Internal quotation marks omitted.) *Reardon* v. *Zoning Board of Appeals*, 311 Conn. 356, 366, 87 A.3d 1070 (2014); see also *Lallier* v. *Zoning Board of Appeals*, 119 Conn. App. 71, 78–79, 986 A.2d 343 ("[L]itigation about the merits of a cease and desist order does not permit a collateral attack on the validity of the underlying zoning decision that was not challenged at the time that it was made . . . . In light of [*Upjohn Co.* and *Torrington*], the trial court in the present case properly declined to address the merits of the defendants' disagreement with the zoning commission's . . . approval of the plaintiff's . . . proposal." (Citations omitted; footnote omitted.)), cert. denied, 295 Conn. 914, 990 A.2d 345 (2010).

In *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 102, our Supreme Court determined that a plaintiff may not collaterally attack a condition to an

approved zoning permit application because the plaintiff had failed to appeal the condition at the time it was imposed. The plaintiff in *Upjohn Co.* had applied to the local planning and zoning commission to build structures on its property, and the commission approved the zoning permit application, subject to several conditions. Id., 98. The plaintiff "did not appeal or otherwise challenge the validity or imposition of" one condition with which it later failed to comply. Id., 98–99. When a zoning enforcement officer served the plaintiff with a cease and desist order for failure to comply with the condition, the plaintiff appealed to the zoning board of appeals and, subsequently, to the trial court, contesting the validity of the underlying condition. Id., 99. The trial court sustained the appeal. Id., 100.

On review, our Supreme Court agreed with the zoning board of appeals that "the trial court incorrectly concluded that [the plaintiff] could collaterally attack the validity of [the] condition . . . in the enforcement proceedings more than three years after its imposition by the commission and acceptance by [the plaintiff]." Id. "We conclude that [the plaintiff], having secured the permits . . . subject to [the] condition . . . and not having challenged the condition by appeal at that time, was precluded from doing so in the [later] enforcement proceedings . . . . [W]hen a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. . . . It would be inconsistent with th[e] needs [of stability in land use planning and justified reliance by interested parties] to permit, in this case, a challenge to a condition imposed on a zoning permit when the town seeks to enforce it more than three years later." (Citations omitted; internal quotation marks omitted.) Id., 102.

Subsequent cases have applied the rule set forth in *Upjohn Co.* In a somewhat related procedural context, our Supreme Court in *Torrington* v. *Zoning Commission*, supra, 261 Conn. 761, 767–68, applied the rule set forth in *Upjohn Co.* to an action in which a plaintiff attacked a stipulated judgment it had previously failed to appeal. Because the plaintiff had ample notice and opportunity to challenge the judgment at the time it was entered, it could "not [later] collaterally attack the stipulated judgment." Id., 767, 770.

In *Santarsiero* v. *Planning & Zoning Commission*, supra, 165 Conn. App. 779, this court upheld a trial court's determination that a collateral attack by the plaintiffs, nearby property owners, was impermissible under the circumstances. The zoning board in *Santarsiero* had granted an application filed by a landowner for a variance to construct a restaurant with a drive-up window in a zone that specifically prohibited such windows. Id., 764–65. The plaintiffs received notice of

the hearing but did not appeal the decision of the board. Id., 765, 777. Relying on the variance, the landowner applied for a special exception[11] from the local planning and zoning commission, and the commission granted the exception. Id., 765–66. Following three years of related disputes, the plaintiffs appealed to the trial court and attacked, inter alia, the validity of the variance. Id., 770. The trial court dismissed the plaintiff's appeal. Id.

On appeal to this court, the plaintiffs in *Santarsiero* reiterated their argument that the trial court improperly upheld the actions of the commission because the zoning board's decision to grant the variance, on which the commission's decision was predicated, "was not a valid exercise of zoning power and there could not have been any justified reliance on it." Id., 778. This court disagreed. Id., 776. This court noted that the "variance formed the basis of the commission's authority to grant the . . . special exception to the defendant," and the plaintiffs failed to appeal from the variance. Id., 776–77. Accordingly, the plaintiff's opposition to the commission's decision to grant the special exception application, premised on its opposition to the board's granting of the variance application, constituted an impermissible collateral attack. Id., 779.

*Upjohn Co.* and its progeny govern our resolution of the present appeal, and *Santarsiero* is on all fours with the case before us. Nothing in the record suggests that the plaintiffs in the present case were prevented from raising by direct appeal their substantive contentions concerning the validity of the variance. Yet, just as in *Santarsiero*, the plaintiffs failed to appeal from the board's decision to grant the variance. See id., 777. Once the statutory period to appeal the board decision had expired, the board's decision to grant the variance became final. See *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 102. Nevertheless, the plaintiffs attacked the validity of the variance at the commission's hearing on the special permit application. Once again, just as in *Santarsiero*, the variance here "formed the basis of the commission's authority to grant the [special permit] to" Toor; *Santarsiero* v. *Planning & Zoning Commission*, supra, 165 Conn. App. 776; which, according to the plaintiffs, required the commission to deny the special permit application. The commission nonetheless approved the special permit application.[12] The plaintiffs asserted the same argument to the trial court and insisted that the commission's reliance on the variance was misplaced because the variance was void. The trial court concluded that the plaintiffs' argument concerning the variance was an impermissible substitute for an appeal of the board's decision. Finally, the grounds on which the plaintiffs appeal to this court rest entirely on their challenges to the validity of the variance.[13] The plaintiffs' failure to appeal the board's granting of the variance ostensibly forecloses consideration of the merits of their arguments. See *Bochanis*

v. *Sweeney*, 148 Conn. App. 616, 627–28, 86 A.3d 486 (prohibiting collateral "attack on *the substance* of the wetlands permit, which . . . the plaintiffs could have done" by filing appeal (emphasis in original)), cert. denied, 311 Conn. 949, 90 A.3d 978 (2014). Consequently, their collateral attack on the variance is impermissible, unless it falls within one of the exceptions to the general rule barring collateral attacks.

Our Supreme Court has stated that there may be two types of "exceptional cases" wherein "a collateral attack" may be permissible. *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105. Our Supreme Court explained, "[w]e recognize . . . that there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy. It may be that in such a case a collateral attack on such a condition should be permitted. We leave that issue to a case that, unlike this case, properly presents it." Id.[14]

"In *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 150–51, 763 A.2d 1011 (2001), [our Supreme Court] converted this dictum into a holding, and concluded that the continued maintenance of [a] previously unchallenged condition . . . violated the strong public policy against restraints on alienation." *Torrington* v. *Zoning Commission*, supra, 261 Conn. 768. As we have noted, the plaintiffs' attack on the commission's decision to grant the special permit here is premised on the board's alleged lack of authority to grant the variance. Thus, we consider, in turn, the applicability of the exceptions recognized by *Upjohn Co.* to the actions taken by the board in the present case.

We first consider whether the board's decision to grant the variance fell "so far outside what could [be] regarded as a valid exercise of [its] zoning power that there could not have been any justified reliance on it . . . ." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105. "[I]t must be an exceptional [case] that will justify disturbing the stability of unchallenged land use decisions. . . . It is not enough that the conduct in question was in violation of the applicable zoning statutes or regulations. . . . [A] litigant who seeks to invoke this exception must meet a very high standard." (Citation omitted; internal quotation marks omitted.) *Torrington* v. *Zoning Commission*, supra, 261 Conn. 768; see, e.g., *Gay* v. *Zoning Board of Appeals*, 59 Conn. App. 380, 388, 757 A.2d 61 (2000) (permitting collateral attack of condition "imposed by [a] board on a parcel that was not the subject of the variance application before it" under first exception of *Upjohn Co.*). "[T]he party seeking to invoke the exception to

the general rule barring collateral attack on a previously unchallenged land use decision . . . ha[s] the burden to establish that the [board or] commission [acted] . . . without an adequate basis on which to do so." *Torrington* v. *Zoning Commission*, supra, 773. "The question of whether an extrajudicial act of a zoning authority is so far outside the valid exercise of zoning power that there could not have been any justified reliance on it, necessarily permits, in an appropriate case, some inquiry into the reasons for that reliance." Id., 775–76; see also *Santarsiero* v. *Planning & Zoning Commission*, supra, 165 Conn. App. 779.

Section 8-6 provides in relevant part: "(a) The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning . . . regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such . . . regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

As we have stated, "[i]nterpretation of the zoning regulations is a function of a zoning board of appeals. The variance power exists to permit what is prohibited in a particular zone." (Internal quotation marks omitted.) *Santarsiero* v. *Planning & Zoning Commission*, supra, 165 Conn. App. 779. The zoning regulations, similarly, recognize the power of the board to hear and decide variance applications. Vernon Zoning Regs., § 17.2.

By granting the variance at issue, the board acted squarely within its statutorily authorized power to vary zoning regulations. General Statutes § 8-6 (a) (3). The board held a hearing to decide whether to approve the application for the variance, which would vary the 3000 foot separating distance requirement between liquor stores under the zoning regulations. Vernon Zoning Regs., § 17.1.2. The record reflects that the board considered the significance of a sixty-five foot variance as well as any alleged hardship. After discussion and consideration of the application, the board granted the application, that is, it varied the 3000 foot requirement to permit a separating distance of 2935 feet. See id.

The plaintiffs, however, contend that the board impermissibly granted the variance because Toor failed to establish a sufficient unique hardship that affected the property. The plaintiffs also argue that, because

"the location of property is not a legal basis for the granting of a variance . . . the statute confer[red] no authority upon the [board] to grant such a variance." The plaintiffs also asserted that the effect of the variance conflicted with other zoning regulations. Each of these arguments inherently accepts the "adequate basis on which" the board acted—the statutory power conveyed on the board to vary regulations—and forecloses the suggestion that granting the variance constituted an extrajudicial act. *Torrington* v. *Zoning Commission*, supra, 261 Conn. 769–70, 773. Assuming, arguendo, that the plaintiffs' arguments, as the trial court noted, could have presented a "colorable claim" in an appeal of the board's decision, the plaintiffs' arguments nonetheless fail to render the board's action so far outside what could be regarded as a valid exercise of the board's statutory power that there could not have been any justified reliance on it. That is to say, because the board maintained the power to vary zoning regulations, we are unconvinced that the plaintiffs have met the "very high standard" that would trigger an acceptable collateral attack on the board's action. *Torrington* v. *Zoning Commission*, supra, 768.

We now turn to the second *Upjohn Co.* exception. The court in *Upjohn Co.* suggested that, if "the continued maintenance of a previously unchallenged condition would violate some strong public policy," a collateral attack may be warranted. *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105. "We begin by emphasizing that, under this prong of the *Upjohn Co.* formulation, we focus, not on the state of affairs that existed when the condition at issue originally was imposed, but on the current state of affairs in which the condition is being enforced. . . . [W]e focus on the continued maintenance of the condition, and whether, irrespective of the fact that the condition was previously unchallenged, it nonetheless currently violate[s] some strong public policy." (Citation omitted; internal quotation marks omitted.) *Gangemi* v. *Zoning Board of Appeals*, supra, 255 Conn. 150–51. As under the first exception, review under this exception demands a high standard. Compare, e.g., id., 151, 157 (permitting collateral attack on condition to variance that contradicted "the strong and deeply rooted public policy in favor of the free and unrestricted alienability of property" and failed to serve "legal and useful purpose" (internal quotation marks omitted)), with *George* v. *Watertown*, 85 Conn. App. 606, 611–12, 858 A.2d 800 (prohibiting collateral attack on commission action that implicated strong public policy interest but fell within "conformity [of] the law"), cert. denied, 272 Conn. 911, 863 A.2d 702 (2004), and *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, 122 Conn. App. 751, 762, 998 A.2d 1256 (2010) (prohibiting collateral attack on decision made by commission following public hearing at which untruthful representations were allegedly made by interested party and opin-

ing that "misconduct or conflict of interest by members of the board" may, alternatively, "rise to the level of a public policy violation sufficient to support a collateral attack").

Here, the plaintiffs contend that the variance would undermine the "best interests of the town" of Vernon (town). According to the plaintiffs, by adopting its zoning regulations, the town necessarily determined that the allowance of multiple liquor stores within 3000 feet of one another would be "contrary to the best interests of the town." Further, the plaintiffs assert that, if Toor were to open a liquor store on the property, the new store would "establish a new 3000 foot [separating distance] and burden" other preexisting properties. "The applicant's variance, [according to the plaintiffs] will preclude liquor stores from being located within roughly one-half mile of [the] new store." We find the plaintiffs' arguments unavailing.

The plaintiffs' contention that the variance violates public policy because it varies the zoning regulations is not persuasive because it is entirely circular. By definition, "[a] variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town." (Internal quotation marks omitted.) *Mayer-Wittmann* v. *Zoning Board of Appeals*, supra, 333 Conn. 640. Accordingly, every variance granted by a zoning authority, under the plaintiffs' argument, would constitute a violation of public policy sufficient to support a collateral attack. See *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 122 Conn. App. 762. Such a contention is foreclosed by logic and our existing jurisprudence.

As we have acknowledged, nothing in the record suggests that the plaintiffs could not have expressed their concerns, including those concerns about the number of liquor stores in the town, before the board or on direct appeal. Furthermore, the record establishes that Boyajian expressed before the commission concerns about the number of liquor stores in the town to no avail. Because the continued maintenance of the underlying variance does not "violate some strong public policy"; *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 105; the plaintiffs may not collaterally attack the board's decision to grant the variance under this exception.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Collectively, we refer to Boyajian and JPB, LLC, as the plaintiffs. Individually, we refer to Boyajian and JPB, LLC, by their respective names.

[2] Toor filed a motion to intervene in the underlying appeal to the Superior Court, which was granted. Toor has not participated in the present appeal.

[3] "A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town." (Internal quotation marks omitted.) *Mayer-Wittmann* v. *Zoning Board of Appeals*, 333 Conn. 624, 640, 218 A.3d 37 (2019).

[4] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person

aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . . The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes. . . ." The record demonstrates, and the plaintiffs concede, that notice of the board hearing concerning the variance was published in the Journal Inquirer on April 11, 2018. On April 18, 2018, the board granted the variance at the conclusion of the hearing and notified Toor the following day. The plaintiffs do not claim in this appeal that the board did not give proper notice to the public of its decision to grant the variance.

[5] Boyajian did not identify himself as the owner of JPB, LLC, or the operator of Riley's Liquor in his comments to the commission.

[6] When he addressed the commission, Boyajian conceded on the record that the granting of the variance was appealable within the statutory period.

[7] Board member Roland Klee noted after the conclusion of the hearing, "the variance is in effect, [it has] been recorded on the [l]and [r]ecords . . . ." Klee later moved to approve the special permit application "based on its compliance with the [s]pecial [p]ermit standards of [§] 17.3.1. [of the zoning regulations]."

[8] The plaintiffs raised as an additional ground for reversing the decision of the commission that the variance had lapsed because of Toor's failure to make any substantial progress on the use in the year following the board's decision. The trial court rejected this ground, finding the following: (1) "no party adduced evidence . . . relevant to" the claim; (2) Toor "expeditiously applied" for the special permit after the board approved the variance; and (3) because the plaintiffs appealed to the trial court just one month after the commission granted the special permit application, Toor was justified in delaying construction until after the resolution of the appeal. The plaintiffs have not raised this issue in the present appeal, and, accordingly, it is not properly before us.

[9] The trial court considered and rejected the merits of the plaintiffs' argument that the variance was fundamentally void. As set forth subsequently in this opinion, we decline to consider the merits of this argument.

[10] The plaintiffs argue that they properly appealed to the trial court the *commission's* improper application of the zoning regulations and, thus, have valid grounds outside of the underlying variance. The plaintiffs contend that, because the commission did not apply the 3000 foot separating distance set forth in the zoning regulations, it "illegal[ly]" granted the special permit application. The plaintiffs' arguments, however, inextricably recognize the alternative separating distance on which the commission relied in granting the special permit—the 2935 foot separating distance, as authorized by the board. Further, before the trial court, when asked whether the plaintiffs asserted any "claim that there was some other provision unrelated to the variance," counsel for the plaintiffs answered, "[n]o. No traffic issue. Nothing like that, Your Honor."

[11] "[T]he terms 'special exception' and '[s]pecial permit' are interchangeable." *American Institute for Neuro-Integrative Development, Inc.* v. *Town Planning & Zoning Commission*, 189 Conn. App. 332, 338–39, 207 A.3d 1053 (2019); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 5:1, p. 191.

[12] No section of the zoning regulations expressly allows the commission to ignore a related variance, previously granted by the board, in considering an application for a special permit. Moreover, we note that our Superior Courts have suggested that planning and zoning commissions may not ignore related variances that directly bear on the applications before them. See, e.g., *Scandia Construction & Development Corp.* v. *Planning & Zoning Commission*, Superior Court, judicial district of Danbury, Docket No. CV-01-0341705-S (November 16, 2001).

[13] See footnote 10 of this opinion.

[14] In discussing the *Upjohn Co.* exceptions, our Supreme Court, in *Torrington* v. *Zoning Commission*, supra, 261 Conn. 768, noted that the *Upjohn Co.* exceptions were available "to the extent that a party seeks to attack collaterally a previously unchallenged zoning decision *on the basis of the zoning authority's lack of subject matter jurisdiction* . . . ." (Emphasis added.) The plaintiffs in the present case make no claim that the board lacked subject matter jurisdiction to grant a variance. They simply argue that the commission should not have granted the special permit application, on the basis of the invalidity of the underlying variance. Although our case law is somewhat unclear as to whether the *Upjohn Co.* exceptions may

apply to cases in which there is no attack as to subject matter jurisdiction of the prior tribunal, we nonetheless consider the exceptions here.

---